## E. T. Seay & Burnley v. Hopkins, Smith & Co.

**Contract—Settlement of Accounts.**

> In a suit for settlement of accounts between two firms, a contrariety
> of evidence as to terms of the contract was shown. After submission
> to a commissioner, who reported the same amount due, as a receipt
> given in settlement, formerly, the judgment of the lower court thereon
> will not be disturbed.

APPEAL FROM JEFFERSON CIRCUIT COURT.    CHANCERY DIVISION.

October 12, 1869.

Opinion of the Court by Judge Williams:

Apellants and appellees as merchants, the former residing in
Tennessee, the latter in Louisville, Kentucky, had mercantile
transactions running through the years of 1862 and 1863. July
1, 1862, there was an ascertained balance due appellants of
$212.15, which was transferred and settled July 22, 1865, and a
balance then found due to the individual account of Burnley of
$71.61, which was that day paid to him and he receipted by
written memorandum the appellees in full of all claims due him
or Seay & Burnley.

Nevember 16, 1866, some sixteen months subsequently Seay
& Burnley filed their petition surcharging said settlement in two
items, first, that they had been charged with 34 barrels of salt not
delivered, 2nd, that appellees had erroneously and fraudulently
charged for 25 per cent on the salt delivered over the Louisville
market price and had charged 10 per cent commission for pur-
chasing, but which later item they say is correct. They allege
that they sold appellees 24 hogsheads of tobacco at 9 cents per
pound at Gallatin, Tennessee and that appellees were to pay there-
for in salt at the Louisville market rates, they paying freight,
etc., but if the military should interfere with shipments so it
could not be transported to Gallatin, then appellees were to pay
for it in Tennessee currency, which they alleged was at par at
home, though at 25 per cent discount at Louisville. The appel-

lants deny. that this was the contract, but say the tobacco was to be paid for in Tennessee money or if salt could be transported and permits obtained then they were to send salt adding 25 per cent for the discount on the Tennessee currency and were also to have ten per cent commission for purchasing.

They also allege that Burnley, with whom the original contract was made and who subsequently took Seay in as a partner in it, came to Louisville, had a settlement with them, examined their books and each item which was identical with the exhibits of the same subsequently furnished to and filed by appellants and that he received the balance of $71.61 and gave them a receipt in full which is exhibited.

The cause was referred to the master who reported that the evidence was insufficient to show mistake or fraud and to overturn the settlement and receipt in full and which was affirmed by the court and the petition dismissed and which is approved by a majority of this court, Judge Hardin dissenting.

1. Because the plaintiffs prove the contract as they understood and alleged it only by the brother-in-law of one of them and though his statements are corroborated in some important particulars by another, yet are not sufficient to disprove the sworn statements of the defendants as to their understanding of the contract and a deliberate settlement between the parties, after an ample opportunity to examine the items of the account including the very items now surcharged, evidenced by a receipt in full, especially after the adverse report of an intelligent master and the judgment of the lower court.

2. Because without these evidences the intrinsic probabilities to some extent fortify the defendants' version of the contract, for it is agreed that if salt could not be sent to Tennessee then the tobacco was to be paid for in Tennessee currency then at a discount of 25 per cent at Louisville though at par in Tennessee, whilst salt would cost par funds at Louisville where the defendants were doing business. It is hardly probable that defendants would give the same price in an article which would cost them par funds at Louisville whilst they would provide for the alternate payment in cash with funds at 25 per cent discount.

3. It is apparent that the plaintiff desired much more to get the salt than the cash for their tobacco, but there were serious doubts as to getting the salt, because of the difficulties growing out

of military blockades so prevalent during the late Civil War, and this renders it improbable that the defendants agreed to furnish it on a par with Tennessee currency or that the plaintiffs demanded this. These things go to fortify appellees' version of the contract which after a deliberate settlement made after ample opportunity to be informed of the several items of the account and the execution of a receipt in full should not be disturbed on the fleeting recollection of these witnesses testifying more than five years after the contract was entered into and when the times were so pregnant with the most exciting and dangerous public and private incidents. There is no evidence as to the alleged deficiency of salt. Hallam, who acted as agent in the delivery, seems only to know of the delivery of 255 barrels whilst appellants acknowledged the reception of 488 barrels, and in July, 1855, settled for 522 barrels as per accounts since rendered and then open to their inspection.

Wherefore, the judgment is *affirmed* by a majority of the court. Judge Hardin dissenting.

*Bullitt, for appellant.*

---

JUDGE HARDIN, DISSENTING.

Unable to concur in the opinion of the majority of the court in this case, I will briefly state my reasons for dissenting from that opinion.

The petition alleges that the parties contracted for the sale of tobacco by the appellants, at a stipulated price, for barrel salt to be delivered by the appellees at Gallatin, Tennessee. But if appelless were prevented from delivering the salt by military interference, they were allowed to pay for the tobacco in Tennessee currency.

The appellees denied that this was the contract, but set up another, viz: that the tobacco was sold for Tennessee money, with the condition that if salt was paid instead of it, at Louisville prices, the appellants were to account for 25 per cent as the difference between the value of salt at Louisville prices and Tennessee currency.

A settlement was made, and a receipt in full given by one of the appellants, under a mistaken belief as they allege, that the account was kept according to the contract, as they state it; and without a knowledge on their part that said 25 per cent was charged against them, and went to reduce the balance due them.

The account shows the 25 per cent was charged, and the fact is not controverted, but the appellees rely on the settlement and receipt in full and the opinion of the majority of this court, sustains that view in affirming the judgment dismissing the petition.

I do not understand from the opinion of the majority of the court, that it holds the receipt to be conclusive, even if the alleged mistake is not proved. But that it conduces strongly to sustain the appellees version of the contract, and that they paid all that was due from them, on the tobacco and salt transactions, and in this I concur. But the defense makes the fact of payment in full depend on the question whether the plaintiffs or the defendants statement of the contract, is true. For if it is true that the trade was of tobacco for salt, at Louisville prices, then there was no pretext for the charge of 25 per cent. But if it was a sale of tobacco for Tennessee money, then as it appears that that purchase though current in Tennessee, was at a discount in Kentucky, it was right to charge the difference, if salt was paid instead of the Tennessee currency.

The fact that salt was sent forward and delivered as the tobacco was received, in accordance with what the plaintiffs allege to have been the contract, is presumptive evidence that such was the contract. And the witness Andrews proves the contract to have been as alleged by the plaintiffs, and although the majority of the court, in their opinion, assume that Andrews is the only witness to this point, he is fully corroborated by Ellis in the important statement, that the trade was a barter of tobacco for salt.

Thus two witnesses sustain the plaintiffs in their statement that the contract was a barter or sale of tobacco for salt, while no witness proves any such contract as the defendants allege.

As it seems to me, the opinion of the majority of the court, rests on the assumption, that the presumptive evidence which the settlement and receipt alone furnish, as to the terms of the contract, is sufficient to outweigh the testimony of two witnesses who were present when the contract was made; and as I do not concur in

that assumption, I have felt constrained respectfully to dissent from said opinion, and express my reasons for doing so.

*Bullitt, for appellant.*